SHIPP et al. v. RARICK et al.—74 S. W. (2d) 1.

Eastern Section.   November 15, 1933.

Petition for Certiorari Overruled by Supreme Court, January 13, 1934.

Tatum, Anderson & Tatum, of Chattanooga, for plaintiffs in error.
W. E. Wilkerson, Carter J. Lynch, and Goins & Gammon, all of Chattanooga, for defendants in error.

THOMPSON, J.   The plaintiffs below, L. P. Rarick ,and wife, J. H. Rarick, instituted this suit before a justice of the peace against the defendant below, Alvin Shipp, trustee of Hamilton county, to recover the sum of $1.88, the same being $1.63, 7 per cent penalty on $25.23, property tax, and two months' penalty thereon, and 25 cents fee for the issuance of a tax receipt, which the plaintiffs had paid under protest.   The justice of the peace rendered judgment in favor of the plaintiffs for $1.88 and costs, and the defendant appealed to the circuit court, where the case was tried without the intervention of a jury.

The circuit court likewise rendered judgment in favor of the plaintiffs for $1.88, and the costs of the cause, and the defendant, his motion for new trial having been overruled, has appealed to this court and has assigned errors.

The plaintiffs were the owners of lot 4, block 17, Normal Park addition to Hamilton county, which was assessed to them on the tax books in said trustee's office.   On March 1, 1932, the state and county taxes, amounting to $23.12, became delinquent on this property, and by April 27, 1932, the penalty of one-half of 1 per cent per month amounted to 23 cents, making the total of tax and penalty $23.35.

Some time prior to April 27, 1932, the defendant appointed his brother-in-law, L. O. Myers, as his deputy to collect the delinquent 1931 property taxes. The defendant did not, however, furnish to said deputy a list of the delinquent taxpayers, with the description of the property assessed against each and the amount of taxes due from each. As to this he testified as follows:

"Q. Did you make out a list or turn the books themselves over to him (Myers)? A. I turned the books over as a list. The list would have been an exact duplicate of the books.

"Q. Do the books show every item the collector must know in order to make collection? A. Yes, sir.

"Q. Would it in any way have facilitated matters to make out a list? A. No, sir; the books were better than the list. . . .

"Q. Would the making out of this list result in anything except to delay the collection? A. That is all.

"Q. And add some expense? A. Yes, sir. . . .

"Q. Now, after you turned over these books to the delinquent tax collector, state whether or not he is in exclusive charge of collections? A. Absolutely, yes. . . .

"Q. Now, at the time the taxes were paid in this case by Mr. and Mrs. Rarick on April 27, 1932, no list of delinquent taxpayers and description of the property assessed against them and the amount due was furnished this deputy trustee of yours, was it? A. Not a separate list, the books were furnished him.

"Q. You didn't furnish any list to him at all? A. No, sir; turned the books over to him.

"Q. Do you understand you are the custodian of the books in the trustee's office? A. Yes, they don't go out of the office.

"Q. And you understand you have to keep them and turn them over to your successor? A. Yes, sir.

"Q. And you have no right to turn them over to anybody else? A. No, sir.

"Q. On March 31st, you turned the books over to him? A. Yes, sir. . . .

"Q. There was no change whatever made in your office on April 1, 1932, when you say you turned the books over to Mr. Myers? A. The only change made my regular force went to other work and he took up the collection of taxes. He used the remainder of our receipts.

"Q. The same equipment, supplies and so forth, were furnished by the county? A. Yes, sir.

"Q. There was no change in the personnel of your office? A. No, sir.

"Q. Mr. Myers came and went as he did before April 1st? A. When he was there. . . .

"Q. Now, if I get this right, you collect the taxes in your office from the time they become due until the first of April, either you or your salaried deputies? A. Yes, sir. . . .

"Q. After taxes do become delinquent, and on April 1st, you place all the delinquent taxes in the hands of the deputy trustee appointed for that purpose? . . .

"Q. You turned the collection over to him? In place of turning a list over you turned the books over? A. Yes, sir."

Mr. Myers testified as follows:

"Q. At any rate you were appointed in 1931 to begin collection April 1, 1932, by the trustee? A. Yes, sir.

"Q. Did the trustee furnish you a list or turn over to you the tax books for this purpose? A. He turned over to me the tax books. . . .

"Q. Now, since the delinquent tax collections were turned over to you, where have you collected those taxes? A. In Mr. Shipp's office. . . .

"Q. How long do you keep these delinquent tax books? A. It varies, when I was first in it was June 1st.

"Q. Now, it is the first of April? A. Yes, sir.

"Q. And when do you turn them back to the trustee? A. The first of January. . . .

"Q. Now, when these taxes and penalties were paid on April 27, 1932, at that time the trustee had not made out and furnished you a list of delinquent taxpayers? I say the trustee had not made out any such list? A. He turned the books over to me.

"Q. What formality did he go through at the time he turned the books over to you? A. At the time he gave me a letter stating the total amount of uncollected taxes."

From the foregoing and other evidence in the record it appears that, instead of furnishing the deputy, Myers, a list of the delinquent taxpayers, with the description of the property assessed against each and the amount of taxes due from each, the defendant trustee simply permitted said deputy to have access to the tax books in his (said trustee's) office, and allowed said deputy to use said office as a place to collect the delinquent taxes and to use the tax receipts, etc., which the county had furnished. It also appears that at times the deputy poll tax collector, one Smith, made collections of delinquent property taxes from delinquent taxpayers who came to the office to pay their taxes at times when Myers happened to be out of said office. The trustee and some of his salaried deputies occasionally did likewise, but we think these occasions were rare and were incidental and immaterial, and nothing more than an accommodation or courtesy to the taxpayer.

The record also shows that all checks in payment of all delinquent property taxes, interest, penalties and fees, including the 7 per

cent penalty and 25-cent fee for issuing the receipt in favor of the deputy, were made payable to the defendant trustee and were deposited in bank to the credit of said trustee. The 7 per cent penalties and the 25-cent fees to which the deputy (Myers) was entitled were deducted and retained by him from cash collections.

There is no question that Myers made frequent and proper settlements with the trustee.

Shortly prior to April 14, 1932, Mr. W. E. Wilkerson, attorney for the plaintiffs, went to the office of the trustee and offered to pay the amount of taxes, $23.12, and the penalty of one-half of 1 per cent per month for the period of two months, 23 cents, a total of $23.35, but this was refused by the trustee, who contended that the 7 per cent penalty, $1.63, and 25 cents for the receipt, should also be paid, and the trustee threatened to issue a distress warrant if all of the same was not paid.

Finally, on April 27, 1932, after again tendering the $23.35, which was again refused, Mr. Wilkerson, while in the trustee's office, gave to Mr. Myers, Mrs. Rarick's check on the Hamilton National Bank of Chattanooga for the full amount of $25.23. This check was payable to the defendant trustee, and was by Myers deposited in said Hamilton National Bank to the credit of the defendant trustee. Later, Myers deducted his $1.88 from cash collections. Before giving the check to Myers, Mr. Wilkerson wrote on the back of it the following:

"This check covers the following items:

"1931 State and County Tax, Lot 4, Block 17, Normal Park, $23.12

"Penalty $2.11,

"of this penalty $1.88, is paid under duress

"and protest, which $1.88, is 7% penaly on

"23.35, or $1.63, and 25¢ for writing receipt."

Mr. Myers delivered to Mr. Wilkerson a receipt signed "Alvin Shipp, County Trustee, By L. O. Myers."

The question is, Does the failure of the defendant trustee to furnish Myers with a list of the delinquent taxpayers, with the description of the property assessed against each and the amount of taxes due from each as provided in section 1565 et seq. of the Code, render the trustee liable under the facts and circumstances as hereinbefore set out? and the case of Alexander v. Henderson, 105 Tenn., 431, 58 S. W., 648, is cited by both sides.

The insistence of the trustee is that section 1565 of the Code is merely directory, and that the tax books themselves had at least been constructively delivered to Myers and were constructively in his hands and were sufficient authority under the law, Code, section 1574, to entitle Myers to collect the taxes and the 7 per cent penalty and the 25-cent receipt fee, etc.

Suppose the trustee had delivered the tax books to Myers who had carried them to some office which he maintained in some office build-

ing in Hamilton county. This would have been a clear violation of the law, and said books thus in his hands would not in our opinion have constituted sufficient authority to entitle him (Myers) to collect the delinquent taxes, interest, penalties, and fees, regardless of how regular his appointment might have been. However then could the fact that the books were left in the trustee's office, and Myers given constructive possession of them or simply given access to them, put Myers in any stronger legal situation? We do not believe it could.

We are of the opinion that under the law the tax books in his hands constitute the trustee's sole authority, and the delinquent list in the deputy's hands constitute the deputy's sole authority. Such is our construction of the statutes and of the opinion of the Supreme Court above mentioned.

It results that in our opinion there was no error in the judgment of the court below, and the same will be affirmed, with costs.

Portrum and Snodgrass, JJ., concur.